# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

|  |  |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO<br>    Petitioner | ) No. 22-2674<br>)<br>)<br>) |
| v. | ) Board Case Nos.<br>) 25–CA–234477 |
| NATIONAL LABOR RELATIONS BOARD<br>    Respondent | ) 25–CA–242081<br>) 25–CA–244883<br>) 25–CA–246978 |
| and | )<br>) |
| TROY GROVE, a Division of Riverstone Group, Inc. and VERMILION QUARRY, a Division of Riverstone Group, Inc.<br>    Intervening Respondents | )<br>)<br>)<br>)<br>) |

---

|  |  |
|---|---|
| TROY GROVE, a Division of Riverstone Group, Inc. and VERMILION QUARRY, a Division of Riverstone Group, Inc.<br>    Petitioners | ) No. 23-1014<br>)<br>)<br>) |
| v. | )<br>) Board Case Nos. |
| NATIONAL LABOR RELATIONS BOARD<br>    Respondent | ) 25–CA–234477<br>) 25–CA–242081<br>) 25–CA–244883 |
| and | ) 25–CA–246978<br>) |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO<br>    Intervening Respondent | )<br>)<br>)<br>)<br>) |

---

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD | ) No. 23-3172 |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) Board Case Nos. |
| TROY GROVE, a Division of Riverstone Group, Inc. and | ) 25–CA–234477 |
| VERMILION QUARRY, a Division of Riverstone Group, Inc. | ) 25–CA–242081 |
| Respondents | ) 25–CA–244883 |
| | ) 25–CA–246978 |
| and | ) |
| | ) |
| INTERNATIONAL UNION OF OPERATING | ) |
| ENGINEERS, LOCAL 150, AFL-CIO | ) |
| Respondent | ) |

## THE NATIONAL LABOR RELATIONS BOARD'S OPPOSITION TO INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150's MOTION FOR SANCTIONS

International Union of Operating Engineers, Local 150 ("Union") has filed a

motion for sanctions and attorneys' fees (Dkt. 47) ("Motion") against the National

Labor Relations Board ("Board") and its counsel under Federal Rule of Civil

Procedure Rule 11 ("Rule 11") and 28 U.S.C. § 1927 ("Section 1927"). The

Motion attempts to show that the Board knowingly misled the Court when it

argued that the Union failed to raise a claim during the administrative proceedings

and therefore the Court is jurisdictionally barred, under Section 10(e) of the Act,

from addressing that claim on appeal. 29 U.S.C. § 160(e) ("[n]o objection that has

not been urged before the Board … shall be considered by the court," absent

extraordinary circumstances).  The administrative record makes clear that the

Board's jurisdictional-bar argument accurately summarized the earlier proceedings.

As the Board did not mislead the Court, knowingly or otherwise, the Union's

baseless Motion fails to state any claim under either Rule 11 or Section 1927.[1]

Rather, after the Board refused to withdraw its meritorious argument in the face of

the Union's threats, the Motion serves as a desperate and improper attempt to

short-circuit the Court's fully informed review.  The Board respectfully requests

that the Court deny the Union's Motion.

## I.     FACTS AND PROCEDURAL HISTORY

### A. The Administrative Law Judge's Decision Regarding Riverstone's Unilateral Implementation of a New Punch-In Policy

Based on charges filed by the Union, the Board's General Counsel issued an

unfair-labor-practice complaint alleging, *inter alia*, that Troy Grove, a Division of

Riverstone Group, Inc., and Vermilion Quarry, a Division of Riverstone Group,

Inc. (collectively, "Riverstone") violated Section 8(a)(5) and (1) of the Act by

unilaterally implementing a new punch-in policy without providing the Union

notice and an opportunity to bargain.  Based on evidence introduced at a hearing,

---

[1] Since Section 1927 permits a court to impose sanctions only against attorneys
personally, all counsel for the Board who have appeared in this case have obtained
representation through the Department of Justice ("DOJ").  DOJ counsel is also
filing, on behalf of counsel in their personal capacities, an opposition to the
sanctions motions to the extent that motion is directed against counsel.

an administrative law judge found that employees had historically punched in whenever they arrived, as opposed to their scheduled starting time, and received overtime pay for any extra time. Then, on January 22, 2019, without notifying or bargaining with the Union, Riverstone posted a notice saying that employees could not punch in more than 5 minutes before their scheduled starting time. Based on those facts, the judge found that Riverstone's unilateral implementation of the new punch-in policy violated Section 8(a)(5) and (1) because there was no evidence of impasse and no language in the expired collective-bargaining agreement covering punch-ins or stating that any provision would survive expiration. (DO18-19.)

## B. Riverstone Excepts To the Scope of the Unilateral-Change Violation

To appeal the judge's decision to the Board, Riverstone filed exceptions and a brief in support of its exceptions. In its exceptions brief, Riverstone argued that even if it made a unilateral change to its punch-in policy, its change to the terms and conditions for employees hired as permanent strike replacements did not violate the Act. (Exc. Br. 34-35.)[2] In support of that point, Riverstone cited *Capitol-Husting Co. v. NLRB*, 671 F.2d 237, 246 (7th Cir. 1982) (explaining that it is settled that duty to grant opportunity to bargain before changing terms and

---

[2] Riverstone also argued that it had not changed policy but merely enforced the work schedule in accordance with past practice. Additionally, Riverstone claimed that any change was not a material, substantial, and significant change that triggers the duty to bargain. (Exc. Br. 31-34.) Those arguments are not relevant to the Motion.

conditions of employment "does not extend to the terms and conditions of employment for replacements of striking employees"). (Exc. Br. 34.) Thus, Riverstone asserted a legal argument to narrow the scope of the unilateral-change violation because it had the right to set employment terms for strike replacement employees.

### C. The Union's Answering Brief Does Not Address Riverstone's Legal Argument To Narrow the Scope of the Unilateral-Change Violation

The Union filed an answering brief to Riverstone's exceptions. After setting forth general principles applicable to a unilateral change violation, the Union stated, "Riverstone unilaterally changed the punch in/punch out policy <u>for all employees whether a replacement worker or otherwise</u> without bargaining or giving the Union notice or an opportunity to bargain." (Ans. Br. 46 (emphasis in original).) In a footnote, the Union went on to state, "[Riverstone] argues that 'unilateral changes for permanent replacements do not violate the Act.' ([Exc.] Br. p. 34-35). Assuming the replacements are permanent, the change applied to all employees not just the replacement workers and therefore the unilateral change violates the Act." (Ans. Br. 46 n.38.) The Union concludes its argument that Riverstone's unilateral change violated Section 8(a)(5) and (1) by stating, "[f]inally, [Riverstone] argues that it may change the policy for replacement workers. However, assuming that argument is correct, the change applied to all

workers including, for example, Lower, who was not a replacement worker and whose early punch ins triggered the unilateral policy change." (Ans. Br. 47.)

Importantly, in its answering brief, the Union never attempted to refute Riverstone's claim—which the Board would later accept—that as a matter of law Riverstone had the right to set terms of employment for replacement employees. Nor did it distinguish *Capitol-Husting Company*, 671 F.2d at 246. It wholly failed to explain why the violation could not be narrowed to exclude replacement employees given Riverstone's right to set their employment terms, or why the remedy must apply to them. The answering brief's only answer to Riverstone's claim was to make the uncontroversial factual point that the change applied to all employees, not just replacements, therefore the new punch-in policy violated Section 8(a)(5) and (1). (Ans. Br. 45-47.)

### D. The Board's Decision and Order Narrows the Unilateral-Change Violation To Exclude Replacement Employees

The Board found that Riverstone violated Section 8(a)(5) and (1) of the Act by unilaterally implementing the new punch-in policy. Accepting Riverstone's argument to narrow the violation, the Board clarified, "[w]e do not, however, find that [Riverstone] acted unlawfully with respect to the implementation of the punch-in policy as it pertains to any strike replacements." (DO 2.) Citing *Detroit Newspapers*, 327 NLRB 871 (1999), and cases cited therein, the Board stated, "an employer need not bargain with a union regarding the terms and conditions of

employment for strike replacements hired during a strike." (DO 2-3.) As a result, the Board "modified the Order and notice to reflect that this violation does not extend to strike replacements hired during the strike." (DO 3 n.13 (citing *Ryan Iron Works*, 332 NLRB 506, 509 (2000), *enforced* 257 F.3d 1 (1st Cir. 2001)). Additionally, the Board clarified that "the make-whole remedy we order for this violation would also not extend to strike replacements hired during the strike who may have been affected by [Riverstone's] implementation of the new check-in policy." (DO 3 n.13.) The Union did not file a motion for reconsideration with the Board before seeking this Court's review. 29 CFR § 102.48(c).

### E. The Union's Brief to the Court Argues that the Board Erred By Narrowing the Unilateral-Change Violation

In its brief to the Court, and for the first time, the Union argued that the Board erred by narrowing the unilateral-change violation to exclude strike replacements. (U. Br. 37-43). The Union made various claims in support of that argument, including:

- The Board's remedy "conflicts with basic principles concerning the rights and obligations of unions" to represent all unit employees. (U. Br. 37.)

- There is no "conflict of interest between representing strikers and their replacements." (U. Br. 37.)

7

- Replacement employees are like other unit employees in that they "have *Weingarten* rights," "if an agreement is reached . . . vote" on it, and vote "if a decertification election is held." (U. Br. 39-40.)

- "After striker replacements are hired, their interests become more aligned with those of the union." (U. Br. 40-41.)

- Replacement employees may still want union representation, as shown when "several replacements voted in favor of Local 150" in a decertification election in which the Union prevailed. (U. Br. 41.)

- The Board effectively "granted [replacement employees] overtime opportunities not available to other employees." (U. Br. 42.)

- The Board's modification to the administrative law judge's recommended order "does not have a reasonable basis in law." (U. Br. 43.)

The Union raised none of those arguments to the Board in its answering brief nor in a motion for reconsideration.

### F. The Board's Brief to the Court Argues that the Union's Claim is Jurisdictionally Barred; the Court Grants the Board's Motion To Lodge Riverstone's Exceptions Brief

The Board's brief concisely condensed the relevant facts, showed how the Union failed to timely oppose narrowing the unilateral-change violation, and reasoned that the claim is now jurisdictionally barred. It accurately summarized the above by stating:

Here, the Union never addressed the punch-in policy's application to strike replacements in response to Riverstone's brief in support of exceptions, which raised the issue. Specifically, Riverstone argued on exceptions that 'unilateral changes for permanent replacements do not violate the Act.' (Riverstone Exceptions Brief 34-35.) In its answering brief, the Union recognized that position—now adopted by the Board—but did not oppose it. The Union merely 'assume[d]' Riverstone's argument was correct, did not rebut it, and instead argued that finding a violation of Section 8(a)(5) and (1) is appropriate because "the change applied to all workers," including employees who were not strike replacements. (Union Answering Brief 46-47 & n.38.) Thus, it never claimed, as it does now, that allowing Riverstone to unilaterally set replacement workers' terms of employment constitutes "error." (U.Br. 15.)

Moreover, when the Board explicitly stated that Riverstone's punch-in change was not unlawful as to the strike replacements, the Union did not file a motion for reconsideration. *See Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665 (1982) (failure to petition for reconsideration fatal to appeal). Under Section 10(e) of the Act, the Court is jurisdictionally barred from addressing that claim.

(Bd. Br. 30-31.)

Nevertheless, the Board's brief went on to address the merits of the Union's arguments such as those challenging the rationale underlying case law permitting employers to set employment terms for replacement workers. (Bd. Br. 31-34.)

Accompanying its brief, and in order for the Court to grasp the full context of the parties' contentions, the Board filed a motion to lodge Riverstone's exceptions brief, which, unlike Riverstone's exceptions and the Union's answering brief, is not part of the administrative record filed with the Court. The Court promptly granted the motion. (Dkt. 40, 42.) Procedurally, Riverstone's exceptions

brief must be before the Court as it is a document cited in the Board's brief. Moreover, to understand the Union's failure in its answering brief to adequately respond to Riverstone's exceptions brief, the Court must review the relevant portions of both briefs.

### G. The Union's Sanctions Motion

Upon reviewing the Board's brief, the Union contacted Board counsel and threatened to seek both Rule 11 and Section 1927 sanctions unless the Board retracted "its argument that Local 150 did not address this issue" and its motion to lodge Riverstone's exceptions brief. (Mot. Exhs. A, C.) When the Board refused to retract either, the Union moved forward with its threatened action.

Before filing a reply brief, and before the Court has had the opportunity to evaluate the merits of the Board's jurisdictional-bar argument, the Union filed its motion for sanctions and attorneys' fees. On its face, the Motion states that it was filed because the Board refused to acquiesce to the Union's demand that it "withdraw or otherwise have its motion to lodge […] stricken." (Mot. 6.)

The Union argues that sanctions are warranted based on the Board's purportedly "baseless" claim that the Union "never addressed the punch-in policy's application to strike replacements." (Mot. 4-5.) The Union argues that it "addressed the issue at pages 45-47 of its answering brief," and "[t]he NLRB knows that the issue [was] addressed." (Mot. 4-5.)

### H. The Union's Reply Brief

After filing the Motion, the Union filed a reply brief addressing, *inter alia*, the Board's jurisdictional-bar argument. (U. Reply Br. 9-13.) The Union claims it argued before the Board "that the unilateral change is unlawful as applied to all employees," but again, only cites pages 45-47 of its answering brief in support of that claim. (U. Reply Br. 11 citing Agency Record 770-72.) Nowhere in those cited pages does the Union respond to Riverstone's legal arguments regarding an employer's right to set replacement employees' terms. Likewise, the reply brief does not and cannot identify where in its answering brief the Union made any of the arguments (see above, pp. 7-8) it has made to the Court in seeking to reverse the Board's narrowing of the violation. The reply brief fails to identify any portion of the administrative briefing where the Union opposed narrowing the unilateral-change violation. Simply put, that argument was never urged before the Board.

## II. ARGUMENT

Sanctions are wholly inappropriate against the Board and its counsel under both Rule 11 and Section 1927. Rule 11 and Section 1927 establish closely related standards. Rule 11 obligates attorneys to present legal filings in good faith, which the Seventh Circuit has described as having "both a subjective and an objective component." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 931 (7th Cir. 1989). The "subjective component" penalizes any filing "interposed for any

improper purpose," even if legally and factually supported. *Id.* at 931-32. The "objective component" demands that an attorney make a "reasonable inquiry" prior to filing. *Id.* As "liability under [Section 1927] is personal to the lawyer," it would be inappropriate to impose sanctions on the Board under that statute. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir. 2019). In any event, Section 1927 provides "residual authority, to be exercised sparingly, to punish misconduct (1) occurring in the litigation itself . . . , and (2) not adequately dealt with by other rules . . . ." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002). For litigation conduct to be punishable under Section 1927, it must "unreasonably and vexatiously" multiply the proceedings. *Kotsilieris v. Chalmers*, 966 F.2d 1182, 1184 (7th Cir. 1992) (emphasis original). The Seventh Circuit has "interpreted vexatious to mean either subjective or objective bad faith." *Id.* At 1184.

The Union's Motion fails to meet those exacting standards and should be considered in light of the presumption of regularity for government actions. *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). As shown below, the Board's jurisdictional-bar argument was not made in bad faith and, in fact, is correct. Even if the court rejects the Board's

argument, the Union has failed to show that it approaches anywhere near

sanctionable conduct.  Finally, the Motion's premature timing, and the Union's

improper attempt to intimidate the Board into withdrawing a meritorious

contention before the Court can even evaluate it, provide additional reasons for

denial.

### A. The Union Cannot Identify Any Sanctionable Conduct Because the Board's Jurisdictional-Bar Argument Is Correct

The Board's jurisdictional-bar argument cannot be "baseless" (Mot. 5) when

it is right.  And it is right.  As explained in the Board's brief (Bd. Br. 30-31), the

Union's position before the Court, that allowing Riverstone to unilaterally set

replacement workers' terms of employment constitutes "error" (U. Br. 15), was

never presented to the Board.  The Union failed to respond to Riverstone's legal

theory (set forth in Riverstone's exceptions) for the narrowing of the violation,

which the Board accepted.  Rather, in its answering brief to the Board, the Union

recognized Riverstone's argument—that unilateral changes for permanent

replacements do not violate the Act—but did not oppose it.  Instead, it "assume[d]"

Riverstone's argument was correct and defended the violation only on the factual

basis that "the change applied to all workers," including employees who were not

strike replacements.  (Union Answering Brief 46-47 & n.38.)  Thus, as the Court

will see in comparing the Union's answering brief with Riverstone's exceptions

brief, the Union did not respond to Riverstone's ultimately successful argument

that precedent allowed the change for replacement employees even if it was unlawful for the rest of the employees.

The Union's general factual assertion before the Board that the change was applied to all workers is a far cry from its arguments before the Court (see above, pp. 7-8) regarding why employers do not or should not have the right to set replacements employees' terms and conditions of employment. Because the Union failed to raise those arguments at the appropriate time, in its answering brief, Section 10(e) precludes this Court from addressing them. *See United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice"); *Barton Brands, Ltd. v. NLRB*, 529 F.2d 793, 801 (7th Cir. 1976) (party barred from raising issue to court because it did not raise the issue, *inter alia*, "in a brief to the Board").

After failing to present those arguments in its answering brief, the Union could have done so in a motion for reconsideration. It chose not to and instead proceeded directly to this Court. *See Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665 (1982) (failure to petition for reconsideration fatal to appeal). In its reply brief (U. Reply Br. at 12), the Union disputes the necessity of filing a motion for reconsideration but the only supporting case it cites is inapposite. In

*Local 65-B, Graphic Communications Conference v. NLRB*, the union had "no need to file an exception" regarding a factual finding that was not adverse to its position, and "no way of knowing" the Board would overrule or distinguish legal authority that had never been cited in the administrative briefing. 572 F.3d 342, 349-50 (7th Cir. 2009). Here, by contrast, Riverstone's exceptions brief put the Union on notice that the Board would need to address whether the unilateral-change violation extended to strike replacement employees. The Union failed to object to narrowing the scope of the violation found by the judge. Consequently, Section 10(e) of the Act jurisdictionally bars the Court from addressing that untimely argument now.

### B. Even if the Court Disagrees With the Board's Jurisdictional-Bar Argument, It Does Not Warrant Sanctions

In the unlikely event that the Court disagrees with the Board's jurisdictional-bar argument, the Union has nonetheless failed to show that sanctions are warranted. According to the Union's own cited case, Rule 11 sanctions are appropriate when an argument is "not merely wrong but frivolous … and utterly devoid of merit." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 945 (7th Cir. 2020). In that case, Rule 11 was triggered when counsel cited various irrelevant dictionary definitions even after, "[o]n several occasions the court had admonished [counsel] that it did not see how those arguments could be presented consistently with Rule 11." *Id.* at 958 (quotations omitted). The Board's jurisdictional-bar

argument, by contrast, is at the very least a colorable claim and should cause no such rebuke. Also in *Royce*, Section 1927 sanctions were imposed because counsel "flagrantly and unashamedly disobeyed the court's order" and unreasonably caused further delay after "a long history of delaying the proceedings." *Id.* at 959. None of those concerns are present in the instant case.

The portions of the administrative briefs and precedent cited by the Board, all of which support imposing Section 10(e)'s jurisdictional bar, amply demonstrate that the Board's argument is neither "baseless [n]or made without a reasonable and competent inquiry," such that it is clearly not "frivolous" for purposes of Rule 11. *See Berwick Grain Co. Inc. v. Illinois Department of Agriculture*, 217 F.3d 502, 504 (7th Cir. 2000) (quoting *Independent Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.*, 202 F.3d 965, 969 (7th Cir. 2000)). The Union's citation to *Berwick Grain* (Mot. at 5) draws a useful contrast. There, counsel looked for authority supporting his claim, found none, and "when his quest proved futile … disregarding the rule, filed anyway." *Id.* at 505. Here, by contrast, Board counsel sought, found, and cited the facts and the law to support its argument. Indeed, the Board's brief and Union's Motion cite the same portions of the Union's answering brief in arguing over the application of Section 10(e)'s jurisdictional bar. The difference is that the Board asks the Court to consider those arguments in the logical and appropriate context of Riverstone's exceptions brief to which the Union

was responding while the Union presents the arguments of its answering brief in a vacuum.

## C. The Motion is Premature and Brought for an Improper Purpose

Aside from its lack of merit, the timing of the Motion—before the Union filed its reply brief and before the Court has determined the merits of the jurisdictional-bar argument—calls into question its propriety. The Union used its sanctions motion to dispute the Board's argument when it knew full well it would have the opportunity to do so in a reply brief—which it has now done. By raising its disagreement at an earlier stage, in a premature motion for sanctions outside the briefing schedule ordered by the Court, the Union itself "unreasonably and vexatiously" multiplies the proceedings. *See Kotsilieris*, 966 F.2d at 1184; 28 U.S.C. § 1927. And it preemptively asks the Court to determine that an argument is frivolous before weighing its merits in the first instance.

Moreover, by threatening to file the Motion unless the Board withdrew its jurisdictional-bar argument and its motion to lodge Riverstone's exceptions brief, the Union sought to deprive the Court of the full panoply of the Board's contentions in context. The Union's baseless Motion acrimoniously escalates a garden-variety dispute over the preservation of arguments, which should be examined through standard appellate briefing and oral argument. It wastes the resources of the Court, the Board, and—by seeking to impose personal liability on

18

government attorneys acting within the scope of their employment—the Department of Justice. The advisory committee to the Federal Rules of Civil Procedure warns against any such use of Rule 11, which improperly duplicates proceedings and unnecessarily increases the cost of litigation.[3] Entertaining a motion brought for such an improper purpose would invite further sharp practice from litigants. The Motion should be denied.

---

[3] The 1993 Advisory Committee Notes to Rule 11 state:

> [Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, *to intimidate an adversary into withdrawing contentions that are fairly debatable*, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

Fed. R. Civ. P. 11(b), (c) advisory committee's note to 1993 amendment (emphasis added).

## CONCLUSION

The Union's Motion lacks any factual or legal support for sanctioning the

NLRB or its counsel under Rule 11 or Section 1927. The Motion should therefore

be denied in its entirety.

Respectfully submitted,

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street SE
Washington, DC  20570
(202) 273-2960

Dated at Washington, DC
this 21st day of March 2024

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO <br> Petitioner | ) No. 22-2674 <br> ) <br> ) <br> ) <br> ) |
| v. | ) Board Case Nos. <br> ) 25–CA–234477 |
| NATIONAL LABOR RELATIONS BOARD <br> Respondent | ) 25–CA–242081 <br> ) 25–CA–244883 <br> ) 25–CA–246978 |
| and | ) <br> ) |
| TROY GROVE, a Division of Riverstone Group, Inc. and VERMILION QUARRY, a Division of Riverstone Group, Inc. <br> Intervening Respondents | ) <br> ) <br> ) <br> ) |

_____

| | |
|---|---|
| TROY GROVE, a Division of Riverstone Group, Inc. and VERMILION QUARRY, a Division of Riverstone Group, Inc. <br> Petitioners | ) No. 23-1014 <br> ) <br> ) <br> ) |
| v. | ) <br> ) Board Case Nos. |
| NATIONAL LABOR RELATIONS BOARD <br> Respondent | ) 25–CA–234477 <br> ) 25–CA–242081 <br> ) 25–CA–244883 <br> ) 25–CA–246978 |
| and | ) <br> ) |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO <br> Intervening Respondent | ) <br> ) <br> ) |

_____

_____
                                         )

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD | ) No. 23-3172 |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) Board Case Nos. |
| TROY GROVE, a Division of Riverstone Group, Inc. and | ) 25–CA–234477 |
| VERMILION QUARRY, a Division of Riverstone Group, Inc. | ) 25–CA–242081 |
| Respondents | ) 25–CA–244883 |
| | ) 25–CA–246978 |
| and | ) |
| | ) |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, | ) |
| LOCAL 150, AFL-CIO | ) |
| Respondent | ) |

_____ )

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2), the Board

certifies that its response contains 4,198 words of proportionally-spaced, 14-point

type, and the word processing system used was Microsoft Word 365.

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 21st day of March 2024

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

)
INTERNATIONAL UNION OF OPERATING ) No. 22-2674
ENGINEERS, LOCAL 150, AFL-CIO )
     Petitioner )
)
    v. ) Board Case Nos.
) 25–CA–234477
NATIONAL LABOR RELATIONS BOARD ) 25–CA–242081
     Respondent ) 25–CA–244883
) 25–CA–246978
    and )
)
TROY GROVE, a Division of Riverstone Group, Inc. and )
VERMILION QUARRY, a Division of Riverstone Group, Inc. )
     Intervening Respondents )
_____ )
)
TROY GROVE, a Division of Riverstone Group, Inc. and ) No. 23-1014
VERMILION QUARRY, a Division of Riverstone Group, Inc. )
     Petitioners )
)
    v. )
) Board Case Nos.
NATIONAL LABOR RELATIONS BOARD ) 25–CA–234477
     Respondent ) 25–CA–242081
) 25–CA–244883
    and ) 25–CA–246978
)
INTERNATIONAL UNION OF OPERATING ENGINEERS, )
LOCAL 150, AFL-CIO )
     Intervening Respondent )
_____ )

|                                                                      |     |                     |
| -------------------------------------------------------------------- | --- | ------------------- |
| NATIONAL LABOR RELATIONS BOARD                                       | )   | No. 23-3172         |
| Petitioner                                                           | )   |                     |
|                                                                      | )   |                     |
| v.                                                                   | )   |                     |
|                                                                      | )   | Board Case Nos.     |
| TROY GROVE, a Division of Riverstone Group, Inc. and                 | )   | 25–CA–234477        |
| VERMILION QUARRY, a Division of Riverstone Group, Inc.               | )   | 25–CA–242081        |
| Respondents                                                          | )   | 25–CA–244883        |
|                                                                      | )   | 25–CA–246978        |
| and                                                                  | )   |                     |
|                                                                      | )   |                     |
| INTERNATIONAL UNION OF OPERATING ENGINEERS,                          | )   |                     |
| LOCAL 150, AFL-CIO                                                   | )   |                     |
| Respondent                                                           | )   |                     |

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2024, I electronically filed the foregoing

document with the Clerk of the Court for the United States Court of Appeals for

the Seventh Circuit by using the CM/ECF system.  I further certify that the

foregoing document was served on all parties or their counsel of record through the

appellate CM/ECF system.

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 21st day of March 2024